# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4905 | **DATE** | 8/28/2001 |
| **CASE TITLE** | JUAN FLORES, et al vs. VILLAGE OF BENSENVILLE, ILLINOIS, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: defendants' motion to dismiss is granted in part and denied in part. Plaintiffs are ordered to submit an amended complaint in accordance with opinion on or before 9/11/01, defendants to respond on or before 10/1/01. Status hearing set for 10/2/01 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | AUG 29 2001 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | | 22 |
| | Copy to judge/magistrate judge. | docketing deputy initials | |
| TBK | courtroom deputy's initials | FILED FOR DOCKETING 01 AUG 29 AM 7:57 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUAN FLORES & ANTONIA FLORES,<br><br>Plaintiffs,<br><br>v.<br><br>VILLAGE OF BENSENVILLE, ILLINOIS, BENSENVILLE BOARD OF TRUSTEES, JOHN GEILS, PEGGY WALBERG, JOE KRASS, RAY BASSO, BOB STRANDT, and BARBARA WANZUNG, individually, and in their capacities as members of the Bensenville's Board of Trustees, and WILLIAM HAVEL, individually and in his capacity as Building Division Superivisor,<br><br>Defendants. | No. 00 C 4905<br>Paul E. Plunkett, Senior Judge |

## MEMORANDUM OPINION AND ORDER

Plaintiffs have filed a five-count complaint alleging that defendants violated the Fair Housing Act (Counts I and II); 42 U.S.C. § 1981 (Count III); 42 U.S.C. § 1982 (Count IV); and 42 U.S.C. § 1983 (Count V). Defendants have filed a motion to dismiss the suit for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). For the reasons provided in this Memorandum Opinion and Order, defendants' motion to dismiss is granted in part and denied in part.



# Facts[1]

Plaintiffs Juan Flores and Antonia Flores, husband and wife, are Hispanic residents of the Village of Bensenville, Illinois. Defendant Village of Bensenville is a municipal corporation organized under the laws of the State of Illinois. The Village is governed by a six member Board of Trustees, all of whom are named as defendants in this action. The building division supervisor is also named as a defendant.

Plaintiffs are co-owners of two parcels of land, which are referred to as lots "A" and "B." Lot "A" contains two houses, namely 234 South Park Street and 235 South Marion Court. Lot "B" also contains two houses, namely 238 South Park Street and 237 South Marion Court. Plaintiffs used the house located at 238 South Park Street as a residence and rented the other three dwellings as rental property. It is unclear from the record what, if any, of the structures are being inhabited.

Pursuant to the Village of Bensenville's Zoning Ordinance, Section 1.03(b), which provides that only one house is permitted on any one lot, the Village sued plaintiffs in the Circuit Court of Du Page County seeking a permanent injunction to force plaintiffs to comply with the statute, i.e., vacate one of the dwellings on each lot. The Circuit Court issued the permanent injunction, and the Second District Appellate Court of Illinois affirmed. However, the parties appear to dispute which two houses were ordered vacated. According to defendant, the permanent injunction "force[d] Plaintiffs to vacate the dwellings at 234 and 238 S. Park St." (Defs.' M. Dismiss at 2-3.) To the contrary, plaintiffs assert that the injunction ordered them to vacate the dwellings at 235 and 237 S. Marion Ct. (Pls.' Resp. at 2.) It is clear from both the state court opinions that the permanent injunction ordered

---

[1] These facts are taken from plaintiffs' complaint unless otherwise noted.

plaintiffs to vacate the dwellings at 235 and 237 S. Marion Ct.[2] (See Pls.' Reply at Ex. A and B.) Although the record is not completely clear, it appears as though plaintiffs have complied with the permanent injunction. In their complaint, plaintiffs seek relief for the Village's alleged selective and discriminatory prosecution of them for violating the one house per lot code provision.

Presumably after the circuit court granted the injunction, plaintiffs have alleged that the following events took place: the Village moved the water meter on lot "B" from the 238 South Park Street house to the 237 South Marion Court house and has refused to re-establish water services at the 238 South Park Street house; the Village stopped providing streets and sanitation services to 237 South Marion Court and refused to cut down a tree in front of the 238 South Park Street house; the Village has continually cited the family truck for parking violations in front of 238 South Park Street; when a fire broke out at 238 South Park Avenue, the Village ordered a "slow down" in fire protection services, which resulted in extensive damage to the house; subsequently, the Village denied plaintiffs a permit to rebuild the 238 South Park Street home or has granted and then rescinded permits authorizing other agencies to perform that construction; and, despite being in substantial compliance with all zoning and building codes, the Village has repeatedly cited plaintiffs for violations of those codes. In their complaint, plaintiffs claim that the above described adverse actions were taken against

---

[2]Exhibit A, which is a review of an administrative decision by the Village of Bensenville ordering plaintiffs to comply with the one house per lot provision, states that the dwellings located on Park Street are the principal structures and the dwellings on Marion Court are the accessory structures. "On October 25, 1994, [Flores] received a letter from the Village of Bensenville ordering him to vacate the accessory structures at 234 and 238 South Park." (Pls.' Reply at Ex. A at 2.) In addition, Exhibit B, which is a Memorandum Opinion and Order issued by the Circuit Court, states that "Plaintiff is permanently enjoined from occupying or allowing the occupancy of the accessory structures located at the rear of 234 and 238 Park Street in the Village of Bensenville as residences." (Pls.' Reply at Ex. B at 5.)

plaintiffs because they are Hispanic. In addition, plaintiffs claim that the zoning and building codes are being enforced against Hispanics in a disparate manner.

In addition to the allegations described above, plaintiffs have also alleged other constitutional claims. Specifically, the Village building codes contain occupancy limit provisions. Plaintiffs claim that these provisions have a discriminatory impact on Hispanics because Hispanics tend to have more children than whites. Plaintiffs also claim that the occupancy limit provisions are enforced against them in a disparate manner. We have jurisdiction pursuant to 28 U.S.C. § 1331.

## Discussion

Defendants have moved to dismiss on three grounds: (1) the Rooker-Feldman doctrine deprives the Court of subject matter jurisdiction over some of plaintiffs' claims; (2) some of plaintiffs' claims are barred by the doctrine of <u>res judicata</u>; and (3) some of plaintiffs claims fail to state a claim upon which relief may be granted. We turn first to defendants' jurisdictional challenges brought pursuant to Rule 12(b)(1).

### Rule 12(b)(1) Standard

There are two types of Rule 12(b)(1) jurisdictional challenges: those that attack the sufficiency of the allegations and those that attack the factual basis for jurisdiction. <u>Cedars-Sinai Med. Ctr. v. Watkins</u>, 11 F.3d 1573, 1583 (Fed. Cir. 1993); 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u>, § 1350 at 211-12 (1990). In ruling on a "facial" attack, the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff. <u>Cedars-Sinai</u>, 11 F.3d at 1583. In ruling on a "factual" attack, however,

the Court "may properly look beyond the jurisdictional allegations of the complaint to determine whether in fact subject matter jurisdiction exists." Sapperstein v. Hager, 188 F.3d 852, 855 (7th Cir. 1999) (internal quotation marks, alterations and citation omitted). If the defendant submits evidence that casts doubt on the Court's jurisdiction, the "presumption of correctness" usually accorded to jurisdictional allegations disappears. Id. at 856. In the end, the plaintiff bears the burden of establishing the existence of federal jurisdiction by competent proof. Id. at 855.

Defendants assert that several of plaintiffs' claims in this case run afoul of the Rooker-Feldman doctrine, an attack on the factual basis for the Court's jurisdiction. Accordingly, the Court will decide this motion based on the undisputed factual allegations of plaintiff's complaint and the extrinsic evidence submitted by the parties.

**Rooker-Feldman**

The Rooker Feldman doctrine is rooted in two Supreme Court cases: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). In Rooker, the Supreme Court held that it was the only federal court authorized to reverse or modify an erroneous state court judgment. Rooker, 263 U.S. at 415-16. In Feldman, the Supreme Court held that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." Feldman, 460 U.S. at 482. "Taken together, Rooker and Feldman stand for the proposition that lower federal courts lack jurisdiction to engage in appellate review of state-court determinations." Ritter v. Ross, 992 F.2d 750, 753 (7th Cir. 1993) (internal quotation marks and citation omitted).

"In assessing the applicability of the Rooker-Feldman doctrine in a particular case, the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." Long v. Shorebank Dev. Corp., 182 F.3d 548, 555 (7th Cir. 1999) (internal quotation marks and citation omitted). If the alleged injury resulted from the state court judgment or is inextricably intertwined with it, Rooker-Feldman bars federal subject matter jurisdiction over the claim. Id. If the alleged injury is entirely distinct from the state court judgment, Rooker-Feldman has no application. Id.

Defendants argue that a number of plaintiffs' alleged injuries in this action resulted from the state court's judgment and, therefore, places this Court in the impermissible position of reviewing the state court's judgment. Not surprisingly, plaintiffs claim that the relief they seek in the instant action is entirely distinct from the state court action.

To determine whether plaintiffs' alleged injuries in this action run afoul of the Rooker-Feldman doctrine, we must identify the state court judgment and assess whether any of plaintiffs' federal claims derive from the state court's judgment.

The Du Page County Circuit Court held that plaintiffs properties were in violation of the one house per lot code provision and, therefore, defendants could order plaintiffs "to vacate the accessory structures (the property) located at the rear of 234 and 238 Park Street in the Village of Bensenville." (Pls.' Compl. at Ex. A.) In other words, according to the Illinois court, defendants' ordering plaintiffs to vacate the dwellings located at 235 and 237 South Marion Court was appropriate and lawful.

Plaintiffs have alleged several different factual and legal allegations in the instant action. These claims can be broken down into four categories. The first category includes claims relating to 238 South Park Street. Those discrimination claims include: plaintiffs' being ordered to vacate

the house; the Village continuously citing the family's truck for parking violations in front of the house; the Village refusing to cut down a tree in front of that house; the Village ordering a slow-down in fire protection when a fire broke out at the house; and, the Village denying plaintiffs a permit to rebuild that residence. These alleged injuries are not barred under the Rooker-Feldman doctrine because they are entirely distinct from the state court judgment. The state court judgment ordered plaintiffs to vacate the houses located at 235 and 237 South Marion Court, not the house located at 238 South Park Street. Therefore, because plaintiffs' alleged injuries did not result from the state court's judgment, plaintiffs are not barred from alleging these facts in support of a federal claim.

The second category includes claims relating to both houses on lot "B," i.e., 238 South Park Street and 237 South Marion Court. Those claims include: the Village cutting off water services to the lot and refusing to re-establish water service to either house on that lot. To the extent that the claims in the second category relate to 238 South Park Street, those claims are not barred. However, any claims relating to water services for 237 South Marion Court are barred because assessing plaintiffs' claim may result in a review of the state court's judgment. As a result, those allegations are stricken.[3]

The third category of allegations pertains only to the house located at 237 South Marion Court. Those allegations include: the Village removing the water meter on lot "B" from 238 South Park Street to 237 South Marion Court and stopping streets and sanitation services to that residence.

---

[3]Most likely, in order for plaintiffs to be entitled to water services at 237 South Marion Court, we would have to find that the 237 South Marion Court house was in compliance with the building code. If the house is not in compliance with the building code, then plaintiffs are probably not entitled to water services. Therefore, because assessing the water services claims as to 237 South Marion Court would result in a review or reversal of the state court's judgment that the house was in violation of the code, these claims are barred under Rooker-Feldman.

As stated in the previous paragraph, any claims relating to municipal services at 237 South Marion Court are barred under Rooker-Feldman because the alleged injuries resulted from the state court's judgment. As a result, those allegations are stricken.

The fourth category contains general constitutional challenges to the Bensenville zoning and building codes. Those allegations include: selective enforcement of the one house per lot code provision; selective enforcement of other building and zoning code provisions; and, the disparate impact and selective enforcement of the occupancy limit provisions.

Defendants argue that plaintiffs' constitutional claims are barred under our holding in Olague v. Village of Bensenville, et al., 1997 WL 337199 (N.D. Ill. 1997). In Olague, plaintiffs owned a building that was occupied by nine Hispanic tenants who were all members of the same extended family, but not the same immediate family. Id. at *1. The building was located in an RS-5 zoning district, which meant that the building could not be used as a multi-family residence. In addition, the zoning ordinance mandated that only eight people could reside in the residence. The Village of Bensenville sued plaintiffs in state court to enforce the zoning ordinances. The state court held that plaintiffs were in violation of the code and issued a permanent injunction requiring plaintiffs and their tenants to abide by the zoning provisions. Plaintiffs sued in federal court claiming that various provisions of the Village of Bensenville's zoning codes violated the Fair Housing Act, 42 U.S.C. § 3601 et seq. We held that we had jurisdiction over plaintiffs' general challenge to the validity of the code because the alleged constitutional injury was distinct from the state court's judgment. In other words, we could entertain plaintiffs' alleged constitutional injury without reviewing the state court's judgment that plaintiffs were in violation of sections of the zoning ordinance. Id. Like the plaintiffs in Olague, we can entertain plaintiffs' constitutional claims in this case without reviewing the state

court's holding that plaintiffs were in violation of the one house per lot code provision. However, as we noted in Olague, assuming these claims are not barred by Rooker-Feldman, the next step is to determine whether we should dismiss any of those claims on the grounds of res judicata. Therefore, we now turn to defendants' res judicata argument brought pursuant to Rule 12(b)(6).

**Rule 12(b)(6) Standard**

On a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint must be taken as true, with all reasonable inferences drawn in the plaintiff's favor. See Sherwin Manor Nursing Ctr., Inc. v. McAuliffe, 37 F.3d 1216, 1219 (7th Cir. 1994). A complaint may be dismissed only if it is clear that no set of facts consistent with its allegations would entitle the plaintiff to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

**Res Judicata**

The remaining constitutional claims include: defendants selectively enforcing the one house per lot code provision against plaintiffs; defendants citing plaintiffs for zoning and building code violations in a disparate manner; and, the occupancy limit provisions have a discriminatory impact on Hispanics and have been enforced against them in a disparate manner. Defendants contend that these claims are barred under the doctrine of res judicata. With the exception of the first constitutional claim, we disagree.

This Court is required to give to an Illinois judgment the same preclusive effect that it would be given by an Illinois court. See 28 U.S.C. § 1738. The Illinois doctrine of res judicata provides that "a final judgment rendered on the merits is conclusive as to the rights of parties and their privies, and

as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." Housing Auth. for LaSalle County v. Young Men's Christian Ass'n of Ottawa, 101 Ill. 2d 246, 251, 461 N.E.2d 959, 961-62 (1984) (quoting People v. Kidd, 398 Ill. 405, 408, 75 N.E.2d 851, 853 (1947)). Res judicata bars litigation when the following elements are present: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of parties; and (3) an identity of causes of action. People v. Progressive Land Developers, Inc., 151 Ill. 2d 285, 294, 602 N.E.2d 820, 825 (1992). In addition, res judicata bars re-litigation of all matters that could have been raised in the first suit. Housing Auth. for LaSalle County, 101 Ill. 2d at 251-52, 461 N.E.2d at 961-62.

The first two elements are satisfied because the final judgment was rendered by a court of competent jurisdiction and the parties are sufficiently the same.

The final res judicata element is identity of causes of action. Illinois courts have adopted two tests for determining whether this element is met: the same evidence test and the transactional test. Rodgers v. St. Mary's Hosp. of Decatur, 149 Ill. 2d 302, 312, 597 N.E.2d 616, 621 (1992); see also, Zabel v. Cohn, 283 Ill. App. 3d 1043, 1050, 670 N.E.2d 877, 882 (1st Dist. 1996). The same evidence test "bars a second suit if the evidence needed to sustain [it] would have sustained the first [suit], or if the same facts were essential to maintain both actions." Rodgers, 149 Ill. 2d at 312, 597 N.E.2d at 621. The transactional test "considers whether both suits arise from the same transaction, incident or factual situation." Id. If they do, and each suit arises from "a single group of operative facts," the second action is barred. Id. (citations omitted).

The state court case revolved around whether plaintiffs were in violation of the one house per lot code provision and whether the Village could enforce the one house per lot code provision against

-10-

them. Plaintiffs current attempt to challenge the state court's finding on those issues on the basis of selective enforcement is barred under the doctrine of res judicata. Selective enforcement of the one house per lot code provision results from the "same transaction" and requires the "same evidence" as that used by the state court in determining whether the Village had a right to evict the plaintiffs. As a result, plaintiffs were under a duty to raise this argument at the state court level, or waive it forever.

The remaining constitutional claims in the instant action revolve around selective enforcement and discriminatory impact of <u>other unrelated</u> code provisions. An occupancy limit provision, or other building and zoning provisions, are not related to the one house per lot code provision. Causes of action based on <u>other unrelated</u> code provisions do not "arises from the same transaction," nor require the "same evidence" as the one house per lot code provision. Even assuming these claims arose prior to the state court action, it would have made little sense for plaintiffs to raise these claims at that time because the claims would not have acted as an affirmative defense or a counterclaim. As a result, plaintiffs' remaining constitutional claims are not barred under the doctrine of res judicata.

After sending plaintiffs' legal and factual claims through the Rooker-Feldman and res judicata filters, the following factual allegations remain: plaintiffs' being ordered to vacate 238 South Park Street; the Village refusing to re-establish water services to that house; the Village continuously citing the family's truck for parking violations in front of that house; the Village refusing to cut down a tree in front of that house; the Village ordering a slow-down in fire protection when a fire broke out at that house; and, the Village denying plaintiffs a permit to rebuild that residence. In addition, the following legal allegations remain: the Village selectively enforced building and zoning code

provisions other than the one house per lot code provision against plaintiffs; and, the occupancy limit provisions are selectively enforced and have a disparate impact on Hispanics.

**Equal Protection Clause**

With respect to the discontinuance of municipal services and the denial of a building permit to rebuild 238 South Park Street, defendants contend that plaintiffs have failed to sufficiently allege an equal protection violation. Plaintiffs' response brief fails to address defendants' arguments on this issue.

To state a prima facie claim under the equal protection clause of the Fourteenth Amendment, a plaintiff must demonstrate that: (1) he or she is otherwise similarly situated to members of the unprotected class; (2) he or she was treated differently from members of the unprotected class; and (3) the defendant acted with discriminatory intent. Greer v. Amesqua, 212 F.3d 358, 370 (7th Cir. 2000). With respect to these allegations, plaintiffs have failed to allege that they were treated differently than similarly situated members of the unprotected class. As a result, plaintiffs have failed to allege a prima facie case for equal protection violations. Therefore, these claims are dismissed without prejudice. Plaintiffs are given leave to amend their complaint to re-allege these causes of action.

**Standing**

With regard to plaintiffs' occupancy limit claims, defendants argue that plaintiffs do not have standing. Defendant is correct that in order to have standing, a plaintiff must show that he or she "personally suffered some actual or threatened injury as a result of the putatively illegal conduct of

the defendant." Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 (1979). Additionally, the party must demonstrate that the injury can likely be redressed by a favorable decision. Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 38 (1976).

In their complaint, plaintiffs allege that the Village enforces the code's occupancy limits in a discriminatory manner and that the codes have a disparate impact on Hispanics. Defendants, however, argue that plaintiffs have not alleged any injury that resulted through enforcement of the code "other than alleging that they were forced out of their home and forced to evict their Hispanic tenants . . . ." (Defs.' Reply at 7.) These allegations are sufficient. Defendants argue that these allegations are insufficient because they are intertwined with the state court's judgment, and, therefore, are barred under Rooker-Feldman. As discussed above, Rooker-Feldman does not bar these alleged injuries because the injuries are not the result of the state court's judgment. The state court's judgment held that plaintiffs had to vacate the South Marion Court houses because the houses were in violation of the one house per lot code provision. Occupancy limits have nothing to do with the one house per lot code provision. If the state court had ordered plaintiffs to vacate these houses for violating the occupancy limit provision, then the result would be different.

**Individual capacity claims**

Defendants have moved to dismiss all of the individually named defendants because, according to defendants, plaintiffs have failed to sufficiently allege that these individuals violated the Fair Housing Act or personally participated in any alleged constitutional violation. (Defs.' Resp. at 11.) Plaintiffs' response brief fails to address these arguments.

In order to state a cognizable claim against an individual under the Fair Housing Act, 42 U.S.C. § 3604(a), plaintiffs must allege that the individually named defendants had the authority and power to effectuate the alleged discriminatory acts. See Meadowbriar Home for Children v. G.B. Gunn, 81 F.3d 521 (5th Cir. 1996); Hemisphere Building Co., Inc. v Village of Richton Park, 1996 WL 721132 (N.D. Ill. 1996). In order to state a cognizable claim against an individual under either 42 U.S.C. §§ 1981, 1982, or 1983, plaintiffs must allege personal involvement by the named defendants. See Musikiwamba v. ESSI, Inc., 760 F.2d 740, 753 (7th Cir. 1995)(§ 1981); Hollins v. Kraas, 369 F.Supp. 1355, 1358 (N.D. Ill. 1973)(§ 1982); Payne v. Churchich, 161 F.3d 1030, 1042 n.15 (7th Cir. 1998); 65 F.3d 555, 561 (7th Cir. 1995)(§ 1983).

With respect to the Fair Housing Act claims, plaintiffs have failed to allege that the individually named defendants had the authority or power to effectuate the alleged discriminatory acts. In addition, with respect to the §§ 1981, 1982, and 1983 claims, plaintiffs have failed to demonstrate that any of the individually named defendants were personally involved. As a result, the individually named defendants are dismissed. However, plaintiffs are given leave to amend their complaint to re-allege these claims.

Pursuant to Rule 8, a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). Plaintiffs' complaint is neither short nor does it contain a plain statement of the various claims. Under the present condition of plaintiffs' complaint, it would be difficult for defendants to respond and difficult for this Court to further assess.[4] Therefore, plaintiffs are ordered to submit an amended complaint in accordance with

---

[4]Alleging that defendants violated the Fair Housing Act based on defendants "actions described above" as plaintiffs alleges in Count I is insufficient considering there are thirty-nine

-14-

Rule 8(a). Under each count, plaintiffs are ordered to allege the facts that pertain to that particular count. If facts pertain to more than one count, then plaintiffs can incorporate those facts by reference.

## Conclusion

For the reasons stated herein, any constitutional claims that arise from plaintiffs being ordered to vacate the South Marion Court houses are barred under the Rooker-Feldman doctrine. As a result, any facts supporting those claims are ordered stricken. Plaintiffs' claim that the one house per lot code provision was being selectively enforced is barred under the doctrine of res judicata. However, plaintiffs' other constitutional claims are not barred under the doctrine of res judicata. Plaintiffs are given leave to amend those claims in accordance with this opinion. In addition, the individually named defendants are dismissed without prejudice pursuant to Rule 12(b)(6). In its present condition, plaintiffs' complaint is difficult to assess, and it would be difficult for defendants to respond. Therefore, plaintiffs are ordered to submit an amended complaint in accordance with opinion within fourteen (14) days from the date of this Memorandum Opinion and Order, defendants to respond within twenty (20) days.

**ENTER:**

_____
UNITED STATES SENIOR DISTRICT JUDGE

DATED: August 28, 2001

numbered paragraphs "above" that address all of plaintiffs' claims. (Pls.' Compl. at 13.)