Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4905 | **DATE** | 3/25/2003 |
| **CASE TITLE** | Juan Flores , et al vs. Village of Bensenville, Illinois, e | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .
(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(7) ☐ Trial[set for/re-set for] on _____ at _____ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: there is no genuine issue of material fact on: (1) any of the claims plaintiffs assert against the individual defendants; (2) the Fair Housing Act, section 1981 and section 1982 claims plaintiffs assert against the Village; and (3) the section 1983 equal protection claims and the section 1983 due process claims based on the provision of inadequate water and fire service to 238 Park Street that plaintiffs assert against the Village. Defendants' motion for summary judgment on those claims is, therefore, granted. Any Fourteenth Amendment claim premised on the Village's revocation of the building permit for 238 Park Street is dismissed for lack of subject matter jurisdiction. This is a final and appealable order.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 2 6 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 49 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | 03 MAR 25 PM 3:47 U.S. DISTRICT COURT CLERK | MAR 2 6 2003 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUAN FLORES & ANTONIA FLORES, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> VILLAGE OF BENSENVILLE, ILLINOIS, ) <br> BENSENVILLE BOARD OF TRUSTEES, ) <br> JOHN GEILS, PEGGY WALBERG, JOE ) <br> KRASS, RAY BASSO, BOB STRANDT, and ) <br> BARBARA WANZUNG, individually, and in ) <br> their capacities as members of the Bensenville ) <br> Board of Trustees, and WILLIAM HAVEL, ) <br> individually and in his capacity as Building ) <br> Division Supervisor, ) <br> ) <br> Defendants. ) | No. 00 C 4905 <br> Paul E. Plunkett, Senior Judge <br><br> DOCKETED <br><br> MAR 2 6 2003 |

## MEMORANDUM OPINION AND ORDER

Im their five-count amended complaint, plaintiffs allege that the Village of Bensenville, the members of its Board of Trustees and the Supervisor of its Building Division violated the Fair Housing Act (Counts I and II) and 42 U.S.C. §§ 1981, 1982 and 1983 (Counts III-V).[1] Defendants

---

[1] This is not, as plaintiffs argue, an appeal from the state administrative review proceeding concerning the Village's enforcement of the one-house-per-lot ordinance against plaintiffs or a proceeding to determine the constitutionality of the zoning decision that spawned it. (See, generally, Pls.' Supp. Mem. Law; Defs.' LR 56.1(a)(3) Stmt., Ex. H, Flores v. Village of Bensenville, No. 2-98-0615 (Ill. App. Ct. May 12, 1999).) Rather, as we said in the Order granting in part defendants' motion to dismiss the original complaint, the Court lacks jurisdiction to entertain an appeal from a state court judgment and any claims concerning the constitutionality of the one-house-per-lot zoning decision are barred by *res judicata*. (See 8/28/01 Mem. Op. & Order.)

49

have filed a Federal Rule of Civil Procedure 56(c) motion for summary judgment. For the reasons set forth below, the motion is granted.

**Preliminary Statement**

Parties filing or opposing motions for summary judgment in this district must comply with Local Rule 56.1. That rule requires the moving party to submit a statement of material facts as to which there is no issue. The party opposing the motion must submit a response to the moving party's statement and "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b). Plaintiffs did not submit two separate statements as contemplated by the rule. Instead, they inserted the additional facts that they believe require denial of summary judgment into their responses to defendants' fact statement. As a result, the Court has had to wade through page-long "responses" to individual fact statements to determine which facts are actually in dispute. Though we will not strike the nonconforming fact statement in this case, plaintiffs and their counsel should not expect such lenient treatment in the future.

**Facts[2]**

Juan and Antonia Flores own several properties in the Village of Bensenville ("the Village"): 234 Park Street, 235 Marion Court, 238 Park Street, 237 Marion Court and 227 Garden

---

[2]Unless otherwise noted, the following facts are undisputed.

Street. (Defs.' LR 56.1(a)(3) Stmt. ¶ 2; Pl.'s LR 56.1(b) Stmt. ¶ 2.) The houses at 234 Park Street and 235 Marion Court share a single lot of land as do the houses at 238 Park Street and 237 Marion Court. (Compl. ¶ 5.) Plaintiffs have always resided at either 237 Marion Court or 238 Park Street. (Defs.' LR 56.1(a)(3) Stmt.¶ 5.) They rent the houses at 235 Marion Court and 234 Park Street to Hispanic individuals. (Id. ¶¶ 7-11.)

In 1988, the Village enacted Ordinance No. 4-88. (Id., Ex. K.) The ordinance created an Existing Structures Code. (Id.) The regulations in article four of that code, which govern light, ventilation and space requirements, are identical to the regulations in article four of the 1987 BOCA National Existing Structures Code. (Compare id., Ex. L at 26-30 with id., Ex. J at 46-57.)

**Village Inspections**

In 1994, the Village inspected the houses at 234 and 238 Park Street. (Id. ¶ 17.) Plaintiffs do not recall whether they received over-occupancy citations after those inspections, but no one moved out of either house as a result. (Id. ¶ 18.)[3]

On April 30, 1996, plaintiffs received a letter from their lawyer regarding repairs the Village wanted them to make to 234 and 238 Park Street. (Id. ¶ 20.) Plaintiffs made the requested repairs. (Id.)

---

[3]Plaintiffs object to the facts asserted in this paragraph, but their objection does not dispute the substance of the facts.

In June or July 1997, the Village once again inspected 234 and 238 Park Street. (Id. ¶ 21.) The inspector told plaintiffs they needed to repair the plumbing, which they did to the inspector's satisfaction. (Id.)

The Village again inspected in April 1998. (Id. ¶ 22.) The inspector told plaintiffs that the tenant who lived in the basement of 234 Park Street had to move. (Id.) Plaintiffs said there was no tenant and that was "the end of it." (Id.)

In 1999, plaintiffs sought, and obtained, from the Village a permit to put a new roof on 234 Park Street. (Id. ¶ 23.) In September 1999, the Village inspected and approved the roof. (Id.)

In 1995, the Village inspected 235 Marion Court. (Id. ¶ 19.) After the inspection, plaintiffs were told that the furnace was not working properly, so they replaced it. (Id.)

The Village never issued over-occupancy citations for 235 or 237 Marion Court. (Id. ¶ 52.)[4]

**Zoning of Plaintiffs' Property**

In 1967, the Village rezoned some of its residential property to light industrial. (Id. ¶ 70.) 238 Park Street was one of the rezoned properties. (Id. ¶ 71.) Once the area was rezoned, 238 Park Street became a nonconformity under the Village Zoning Code. (Id. ¶ 72; see id., Ex. M, Zoning Code.)

Under the Zoning Code, minor reconstruction of a nonconformity is permitted, but major reconstruction is not. (Id. ¶ 73.)[5] If a nonconformity requires major reconstruction, which is work

---

[4]See n.3.

[5]See n.3.

that exceeds fifty percent of the replacement value of the structure, the nonconformity must be eliminated. (Id. ¶¶ 73-74.)[6]

**Fire at 238 Park Street**

In the early morning of October 24, 1999, there was a fire at 238 Park Street. (Id. ¶ 26.) Plaintiff Juan Flores and various members of his family were living there at the time. (Id. ¶ 27.) Fifteen to twenty minutes after the fire was reported, four fire trucks reported to the scene. (Id. ¶ 32.) Once they arrived, plaintiff says, it was another fifteen to twenty minutes before the firefighters began dousing the fire, which they did only intermittently. (Id. ¶ 34; Pls.' LR 56.1(b) Stmt. ¶¶ 35, 38.)

After the fire, plaintiffs obtained from the Village a permit to repair 238 Park Street. (Id. ¶ 41.)[7] Subsequently, however, plaintiffs received a letter from the Village saying that the permit had been rescinded. (Id. ¶ 42.)[8] The letter said that the permit had been "inadvertently issued" and that the reconstruction project did not comply with the Village Zoning Code. (Id., Ex. I, 7/25/00 letter to J. Flores from B. Havel.) Because 238 Park Street was a nonconformity and the reconstruction would cost more than fifty percent of the structure's replacement value, the letter said, the permit was being rescinded. (Id.; see id., Ex. O, 11/24/99 letter to Barba from Prater (stating that the estimate to repair 238 Park Street was $75,163.24 and that the building was insured

---

[6]See n.3.

[7]See n.3.

[8]See n.3.

for $143,758.00).) Moreover, the Village told plaintiffs, the property at 238 Park Street could no longer "be used for residential purposes." (Id., Ex. I, 7/25/00 letter to J. Flores from B. Havel.)

After the fire, the Village cut off the water service to 238 Park Street. (Id. ¶ 45.)[9] Because the house at 237 Marion Court is on the same lot, its water supply was also cut off. (Id.) When plaintiffs complained to the Village, they were told that water could not be restored to 237 Marion Court because the meter was for 238 Park Street. (Id.)

In June or July 2001, a Village inspector and police officer arrived at 237 Marion Court and told plaintiff Juan Flores that he had to vacate the premises. (Id. ¶ 47.) Flores responded that a tree in front of the house posed a greater danger than the lack of water. (Id. ¶ 48.) Subsequently, Flores spoke to someone at the Village about the tree. (Id. ¶ 49.) Though it initially disclaimed responsibility for the tree, the Village ultimately removed it. (Id.)

At some point during 2001, plaintiff was issued two parking tickets for parking his pick-up truck in front of 237 Marion Court, which has no driveway. (Id. ¶ 50.) When plaintiff explained the situation to the Village police, however, the two tickets were voided and he was not ticketed again. (Id. ¶ 51.)

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[9]See n.3.

matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. Id.

## Discussion

### Individual Defendants

Plaintiffs sue the individual defendants in both their official and their individual capacities. An official capacity suit against a government official is really just a suit against the entity that employs him. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Thus, the official capacity claims, which are redundant of the claims asserted against the Village, are dismissed.

The personal capacity claims must also be dismissed. Though individuals are subject to liability under the Fair Housing Act ("FHA") and 42 U.S.C. §§ ("section") 1981, 1982 and 1983, such liability requires proof that they were personally or vicariously involved in the acts of discrimination. City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc., 982 F.2d 1086, 1096 (7th Cir. 1992) (stating that direct or vicarious involvement in discrimination supports personal liability under the FHA); Al-Khazraji v. Saint Francis College, 784 F.2d 505, 518 (3rd Cir.) ("If individuals are personally involved in the discrimination . . . or if they authorized, directed, or participated in the alleged discriminatory conduct, they may be held liable [under section 1981].").

-7-

aff'd, 479 U.S. 812 (1986); Hamilton v. Svatik, 779 F.2d 383, 388 (7th Cir. 1985) (holding defendant liable under section 1982 for acts of her agent); Zimmerman v. Tribble, 226 F.3d 568, 574 (7th Cir. 2000) ("An individual cannot be held liable in a § 1983 action unless he caused or participated in the alleged constitutional deprivation.") (alteration, internal quotation marks and citation omitted). Plaintiffs have not proffered any evidence about the individual defendants, let alone evidence that suggests each of them participated in, authorized or directed the actions plaintiffs contest. Accordingly, the individual defendants are entitled to summary judgment on all of the personal capacity claims plaintiffs assert against them.

### The Village

In Counts I and II of their complaint, plaintiffs allege that the Village's enforcement of its Building and Zoning Codes violated the Fair Housing Act ("FHA"). Among other things, the FHA makes it unlawful to "deny . . . a dwelling to any person" or "[t]o discriminate against any person . . . in the provision of services" to any dwelling because of race, color or national origin. 42 U.S.C. § 3604(a)-(b). A violation of the FHA can be proven under either a disparate treatment or disparate impact theory. Metropolitan Housing Dev. Corp. v. Village of Arlington Heights, 558 F.2d 1283, 1290 (7th Cir. 1977).

### Disparate Treatment

Plaintiffs allege that the Village intentionally: denied them water and tree removal services (Am. Compl. ¶¶ 14-16), delayed in providing fire services to them (id. ¶ 18), enforced its parking

regulations against them (id. ¶ 17), denied them a permit to rebuild the fire-damaged house at 238 Park Street (id. ¶¶ 19, 20-22)[10], and enforced its Building Code against them (id. ¶¶ 20-22), all because they are Hispanic. To prevail on their denial of dwelling claims, plaintiffs must first establish a prima facie case of discrimination by showing that: (1) they are members of a protected class; (2) defendants were aware of their class membership; (3) they were ready, willing and able to buy, rent or otherwise inhabit a dwelling; and (4) defendants refused to allow them to do so. Hamilton, 779 F.2d at 387. To prevail on their denial of services claims, plaintiffs must show that: (1) they are members of a protected class; (2) they were qualified to receive the services in question; (3) the Village denied or delayed services to them; and (4) the Village treated a similarly situated person outside of the protected class more favorably. Kyles v. J.K. Guardian Sec. Servs., Inc., 222 F.3d 289, 295 (7th Cir. 2000) (stating that the FHA "is the functional equivalent of Title VII" and that "the provisions of the[] two statutes [should be] given like construction and application."); Traylor v. Brown, 295 F.3d 783, 788 (7th Cir. 2002) (elements of Title VII race discrimination claim are "(1) that [plaintiff] was a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she experienced an adverse employment action; and (4) that similarly situated individuals were treated more favorably."). If plaintiffs succeed in making a prima facie case, the burden shifts to the Village to articulate a legitimate, nondiscriminatory

---

[10]Plaintiffs also allege that the Village discriminatorily enforced its Zoning Code against them. The only alleged instance of Zoning Code enforcement, however, is the Village's revocation of the building permit for 238 Park Street. Thus, the Court construes plaintiffs' challenge to the enforcement of the Zoning Code as limited solely to the permit revocation.

reason for its actions. Hamilton, 779 F.2d at 387. If the Village does so, plaintiffs must prove that the proffered reason is merely a pretext. Id. at 387-88.

Plaintiffs have not made a prima facie case of disparate treatment with respect to their parking and Building Code claims. Though the record establishes that the Village cited plaintiffs for various parking and Building Code violations, there is no evidence that anyone lost their dwelling as a result. (See Defs.' LR 56.1(a)(3) Stmt. ¶¶ 17-14, 50-53; Pls.' LR 56.1(b) Stmt. ¶¶ 17-24, 50-53.) Because plaintiffs have not demonstrated that the Village's enforcement of its parking and building regulations denied them a dwelling, they have not satisfied the last element of the prima facie case.

Plaintiffs have also not made a prima facie case on their claims for discriminatory fire protection, water service and tree removal service. Though there is no dispute that the Village cut off the water supply to 238 Park Street and 237 Marion Court after the fire, there is no evidence to suggest that it continued to supply water to any similarly situated non-Hispanic homeowner. Likewise, though the record suggests that the Village Fire Department may have been dilatory in responding to the fire at 238 Park Street, there is no evidence to suggest that it responds more quickly to fires at homes owned by non-Hispanic individuals. Finally, though the record suggests that the Village could have removed the tree from plaintiffs' property more promptly than it did, there is no evidence that non-Hispanic homeowners receive faster service. Absent evidence that the Village treated non-Hispanics more favorably, plaintiffs have not satisfied the last element of the prima facie case on their discriminatory service claims.

They have, however, made a prima facie case with respect to the denial of dwelling claim based on the Village's revocation of the building permit for 238 Park Street. Thus, the burden shifts to the Village to articulate a legitimate, nondiscriminatory reason for its action. The permit was revoked, the Village says, because the repair work plaintiffs proposed to do constituted major reconstruction of a nonconformity, action that is prohibited by its Zoning Code. (See Defs.' LR 56.1(a)(3) Stmt. ¶¶ 70-74; id., Ex. M, Zoning Code; id., Ex. O, 11/24/99 letter to Barba from Prater (stating that the estimate to repair 238 Park Street was $75,163.24 and that the building was insured for $143,758.00).)

Plaintiffs admit that 238 Park Street was a nonconformity, that the repair work constituted major reconstruction and that major reconstruction on a nonconformity is prohibited by the Zoning Code. (See Pls.' LR 56.1(b) Stmt. ¶¶ 70-74.)[11] Nonetheless, they contend that the Village's explanation is pretextual because it cut off the water supply to 238 Park Street and told plaintiffs, long before it knew that the repair work would constitute major reconstruction, that water would never be restored to that address. (See id. ¶¶ 25, 73.)

Unfortunately for plaintiffs, the record does not support that contention. Both plaintiffs testified that the Village cut off the water supply to 238 Park Street sometime after the fire because the house was uninhabitable. (See Defs.' LR 56.1(a)(3) Stmt., Ex. B, J. Flores Dep. at 50-52; id., Ex. C, A. Flores Dep. at 54-57.) Moreover, both plaintiffs testified that the Village refused to restore water service to 237 Marion Court, which shares a lot with 238 Park Street, because the

---

[11]Plaintiffs object to the facts asserted by defendants in paragraphs seventy-three and seventy-four, but their objections do not dispute the substance of those facts.

water meter was for 238 Park Street. (See id., Ex. B, J. Flores Dep. at 50-52; id., Ex. C, A. Flores Dep. at 54-55.) Neither plaintiff testified, however, that any Village official or employee told them that water service could never be restored to 238 Park Street. Absent such evidence, the fact that the Village cut off the water supply to 238 Park Street shortly after the fire does not cast any doubt on the veracity of the Village's explanation for its subsequent revocation of the building permit for that house. Because plaintiffs have no evidence that indicates the Village's explanation for revoking the building permit was pretextual, the Village is entitled to summary judgment on this claim.

**Disparate Impact**

Plaintiffs also claim that the Village's occupancy regulations violate the FHA because they disproportionately impact Hispanics. To succeed on this claim, plaintiffs must first demonstrate that the regulations, in fact, have a disproportionate impact. Arlington Heights, 558 F.2d at 1290. If they do, the Court must balance the following four factors to determine whether the demonstrated impact warrants imposition of FHA liability: (1) the strength of the showing of discriminatory impact; (2) the existence of evidence of discriminatory intent; (3) the defendant's interest in taking the contested actions; and (4) the nature of the requested relief. Id.

Plaintiffs do not even vault the first hurdle. The only evidence plaintiffs proffer in support of this claim is: (1) ten-year old national statistics that show Hispanic families have, on average, more children than white families and a greater number of household members (Am. Compl. ¶ 24); (2) their testimony that the Village conducted eight interior inspections of 234 and 238 Park Street

between October 1994 and the end of 2000, half of which were motivated by occupancy concerns (see Defs.' LR 56.1(a)(3) Stmt., Ex. D, Pls.' Interrog. Answers ¶ 8); and (3) inadmissible hearsay to the effect that five Hispanic homeowners or tenants were cited, at some unidentified point, for violating the Village occupancy regulations (id., Ex. D, ¶ 19). Plaintiffs offer no evidence about the ethnic and racial composition of the Village, the average size of the Hispanic households in the Village, the average size of the non-Hispanic households in the Village, the number of Hispanic and non-Hispanic households subjected to occupancy inspections each year, the number of over-occupancy citations issued by the Village each year and the ethnic and racial identity of the recipients of those citations. Absent such evidence, plaintiffs have not made a prima facie case that the occupancy regulations disproportionately impact Hispanic residents of the Village.

Even if there were some evidence that the occupancy regulations had more of an impact on Hispanics than non-Hispanics, the Arlington Heights factors would still militate against imposing FHA liability in this case. Plaintiffs have made no showing of discriminatory impact; they have no evidence of discriminatory intent; the Village occupancy regulations, which mirror those in the BOCA Code, are premised on legitimate health and safety concerns; and the relief plaintiffs seek, including the creation of a Village Human Rights Commission and the institution of ethnic sensitivity training for all Village employees, is of a nature that courts are loathe to award in even the most compelling cases. Thus, even if plaintiffs had demonstrated that the Village's occupancy regulations disproportionately impact Hispanics, they would still not be prevail on this claim.

In short, plaintiffs have not raised a genuine issue of fact on any of their FHA claims. The Village's motion for summary judgment on those claims is, therefore, granted.

## 42 U.S.C. §§ 1981, 1982

In Counts III and IV of their amended complaint, plaintiffs allege that the Village's actions violate 42 U.S.C. §§ ("sections") 1981 and 1982. Section 1981 prohibits racial discrimination in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981 (a)-(b). Section 1982 guarantees all citizens the right to "inherit, purchase, lease, sell, hold, and convey real and personal property," regardless of race. 42 U.S.C. § 1982. Liability under either statute requires proof of intentional discrimination. Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996) (section 1981); Phillips v. Hunter Trials Comm. Org., 685 F.2d 184, 187 (7th Cir. (1982) (section 1982). As we noted above, plaintiffs have offered no proof that any of the Village's actions were motivated by discriminatory animus. Accordingly, the Village is entitled to summary judgment on plaintiffs' section 1981 and 1982 claims.

## 42 U.S.C. § 1983

In the last count of their amended complaint, plaintiffs charge the Village with violating section 1983, the statute that provides redress for constitutional deprivations that occur at the hands of certain government actors. To prevail on a section 1983 claim against the Village, plaintiffs must show that they were deprived of a constitutional right pursuant to one of its policies, customs or practices. Monell v. Department of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). Plaintiffs can do so by showing that their injury was caused by: (1) an express Village policy; (2) a Village practice so widespread and permanent that it constitutes a custom or usage; or (3) a
-14-

Village employee with final policy-making authority. Baxter ex rel. Baxter v. Vigo County Sch. Corp., 26 F.3d 728, 734-35 (7th Cir. 1994).

Plaintiffs do not identify the constitutional right of which they were deprived. To the extent they claim their equal protection rights were violated, however, their claim must fail. Only intentional discrimination violates the equal protection clause. Washington v. Davis, 426 U.S. 229, 238-39 (1976). Because there is no evidence that the Village acted with discriminatory intent, they cannot prevail on a section 1983 equal protection claim.

Plaintiffs fare no better if their claim is that the Village, by failing to provide adequate water and fire service to 238 Park Street, deprived them of property without due process of law. To prevail on such a claim, plaintiffs would have to prove that the Village took those actions pursuant to one of its policies. Plaintiffs have offered no evidence to suggest that it did. Thus, to the extent plaintiffs assert section 1983 claims based on inadequate water or fire service, they are dismissed.

Any Fourteenth Amendment claim based on the Village's refusal to allow plaintiffs to repair 238 Park Street is also doomed. A federal regulatory taking claim – whether styled as a taking claim, a procedural due process claim or a substantive due process claim – is ripe for adjudication only if the plaintiff has pursued available state remedies for seeking compensation. Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 187 (1985); River Park, Inc. City of Highland Park, 23 F.3d 164, 167 (7th Cir. 1994) ("[A] property owner may not avoid Williamson by applying the label 'substantive due process' to the claim. So too with the label 'procedural due process.' Labels do not matter. A person contending that state or local regulation of the use of land has gone overboard must repair to state court.") (citation omitted).

Because there is no evidence that plaintiffs have pursued available state remedies for any taking the Village's permit revocation may have effected, any Fourteenth Amendment claim based on that land-use decision is not ripe for adjudication. Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000) (stating that Williamson "preclude[s] federal courts from adjudicating land use disputes," unless the plaintiff has satisfied its ripeness requirements).

## Conclusion

For the reasons set forth above, there is no genuine issue of material fact on: (1) any of the claims plaintiffs assert against the individual defendants; (2) the Fair Housing Act, section 1981 and section 1982 claims plaintiffs assert against the Village; and (3) the section 1983 equal protection claims and the section 1983 due process claims based on the provision of inadequate water and fire service to 238 Park Street that plaintiffs assert against the Village. Defendants' motion for summary judgment on those claims is, therefore, granted. Any Fourteenth Amendment claim premised on the Village's revocation of the building permit for 238 Park Street is dismissed for lack of subject matter jurisdiction. This is a final and appealable order.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

DATED: 3-25-03